**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| ***ex rel.* ANGELA PARATO,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action No. 5:07-CV-76(HL)** |
| **v.** | : | |
| | : | |
| **UNADILLA HEALTH CARE** | : | |
| **CENTER, INC., et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

# ORDER

This case is before the Court on Defendants Unadilla Health Care Center, Inc.,

James Ray Irwin, Bob Lemmon, Charlotte Vestal, Leroy Shewman, Greg Speight, E.K.

Chaney, Ronney Ledford, Betty Ward, Margaret Whitehead, Sherry Evans, and

Barbara Gaston's Motion to Dismiss for Failure to State a Claim, Failure to Plead with

Specificity and Motion for a More Definite Statement (Doc. 27)[1] and Motion to Dismiss

Plaintiff's Amended Complaint (Doc. 41).  Also before the Court is Defendant Bruce

Whyte's Motion to Dismiss Plaintiff's Federal Grant Fraud Allegation for Failure to

State a Claim Upon Which Relief May Be Granted and for Failure to Plead Fraud with

Particularity and Motion to Dismiss the Medicare/Medicaid Fraud Allegation for Failure

---

[1]These Defendants will be referred to collectively as the "UnaHealth Defendants."

to Plead Fraud with Particularity (Doc. 39).  For the reasons discussed below, the Motions are granted, in part, and denied, in part.

## I.    BACKGROUND

Between August 15, 2005 and August 30, 2005, Angela Parato served as Chief Executive Officer for Defendant Unadilla Health Care Center, Inc. ("UnaHealth").  On March 2, 2007, Parato filed a qui tam action on behalf of the United States in which she alleged that her former employer and others presented false claims to the government in violation of 31 U.S.C. § 3729.  Parato named UnaHealth, James Ray Irwin, Bob Lemmon, Charlotte Vestal, Leroy Shewman, Greg Speight, E.K. Chaney, Ronney Ledford, Betty Ward, Margaret Whitehead, Sherry Evans, Barbara Gaston, and Bruce Whyte as Defendants.  As required by 31 U.S.C. § 3730(b)(2), the complaint was placed under seal, awaiting a decision by the United States as to whether it would intervene and act on the complaint.  On November 14, 2008, the United States filed a notice of election to decline intervention in the matter.

The complaint, which contains three counts, was subsequently unsealed and served upon Defendants.  Count One alleges False Claim Act violations under 31 U.S.C. § 3729, Count Two alleges False Claim Act retaliation violations under 31 U.S.C. § 3730(h), and Count Three alleges breach of contract and promissory estoppel claims.  The UnaHealth Defendants filed a Motion to Dismiss Count One of the original complaint.  On September 18, 2009, Parato filed her first amended complaint, which mirrors her initial complaint other than including some documentation

and specifying the name of the medical provider whose provider number the Defendants allegedly used to fraudulently submit patient bills to Medicare and Medicaid.[2]

The UnaHealth Defendants and Defendant Whyte have each filed a Motion to Dismiss Count One of the amended complaint.  The Defendants contend that Count One should be dismissed because it fails to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure and because it fails to satisfy Rule 9(b) of the Federal Rules.[3]

## II.    THE ALLEGATIONS OF THE AMENDED COMPLAINT

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

UnaHealth is a federally qualified health center ("FQHC") in a medically underprivileged area.  It is the recipient of a public health grant from the Department of Health and Human Services ("HHS"), and it also receives enhanced Medicare reimbursement.  The individual defendants, with the exception of Defendant Whyte, were members of UnaHealth's Board of Directors (the "Board") during the time period in question.

---

[2]The Court will use "Medicare" to refer to both the Medicare and Medicaid claims.

[3]Counts Two and Three of the amended complaint are not addressed in Defendants' Motions to Dismiss.

On December 1, 2004, UnaHealth received a $650,000 Section 330 grant from HHS.  Section 330 of the Public Health Service Act defines federal grant funding opportunities for organizations to provide care to underserved populations.  The grant was issued pursuant to an application submitted by UnaHealth on November 23, 2003.  As part of the application, Defendant Irwin, as UnaHealth's authorized representative, certified that UnaHealth "[w]ill establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain," that it would cause financial and compliance audits to be performed, that it "[w]ill comply with all applicable requirements of all other federal laws, executive orders, regulations and policies governing this program," and that no board member "shall be an employee of the Corporation or spouse, child, parent, brother or sister by blood or marriage of an employee."  (Doc. 37-2).  Parato alleges that these assurances were necessary in order to gain approval as a FQHC and receive Section 330 funding.  According to Parato's amended complaint, UnaHealth will receive over $1,950,000 in government funding during the three-year duration of the Section 330 grant, which is to be used exclusively for the operation of a FQHC.

Defendant Whyte was hired by UnaHealth on December 16, 2004 to serve on an as-needed basis until a CEO was hired.  He was responsible for hiring employees, installing a computer program, and ensuring that the Board adopted all appropriate policies and procedures during the start-up period.  Using the initial grant money,

4

UnaHealth commenced operation on April 4, 2005, and started providing non-dental services.  On August 2, 2005, UnaHealth began providing dental services, also using the grant money.

On July 7, 2005, the Board voted to offer the CEO position to Parato.  The Board also decided to have Defendant Whyte remain as interim CEO during a transition period.  Parato was offered the position via letter, and she accepted the position based on the terms set forth in the offer letter.

On August 2, 2005, UnaHealth applied for a continuation of the Section 330 grant, and based on that application, it received continued funding from HHS.  This application contained the same certifications listed in the November 23, 2003 application, and Parato contends that these assurances were necessary in order to maintain approval as a FQHC and receive continued Section 330 funding.

Parato began working as CEO on August 15, 2005.   Her duties included directing and reviewing the development of budget and financial systems in order to assure compliance with all governmental and legal requirements, to organize the staff and resources to carry out the Board's plans, and to administer day-to-day activities of the health center.  She was also to supervise all other UnaHealth employees.

Parato alleges that within one week of starting as CEO, she notified the Board of her concerns regarding UnaHealth's noncompliance with federal grant requirements.  She formulated a plan to rectify the compliance issues, which she intended to have Defendant Whyte implement, and advised the Board of her plan.

According to Parato, Defendant Whyte was unwilling to implement the plan, and she in turn informed the Board of Defendant Whyte's conduct and told the Board that its conduct violated the Section 330 grant agreement. She also informed the Board of fraudulent activity on Defendant Whyte's part with regard to the submission of Medicare claims. Parato was terminated from her position on August 30, 2005.

Parato contends that the Defendants acted fraudulently in connection with both the Section 330 grant and Medicare claims. Among the fraudulent acts attributed to the Defendants by Parato are the following:

> 1.    The Defendants misrepresented compliance with the terms and conditions of the Section 330 grant award.
>
> 2.    The Defendants knowingly violated the terms and conditions of the grant award.
>
> 3.    Defendant Whyte, with the Board's consent and knowledge, purchased an electronic medical records system and training services for UnaHealth from Companion Technologies, while also representing Companion Technologies as a consultant, and the goods and services were purchased without competitive bidding.
>
> 4.    On information and belief, Defendants paid Defendant Whyte using grant money for hours which he did not work and did not maintain any records for the hours for which Defendant Whyte received compensation.
>
> 5.    Defendants awarded contracts to close relatives of Board members, with the Board's full knowledge and consent, and without entertaining bids for the contracts.
>
> 6.    Defendants failed to maintain the type of financial records and documents required by law, failed to institute

proper accounting policies, and failed to conduct proper auditing of UnaHealth's financial information.

7.     Defendants failed to adopt quality assurance policies and procedures.

8.     Defendants failed to conduct competitive bids, failed to maintain proper documentation in awarding contracts, and failed to comply with federal regulations regarding procurement of goods and services.

9.     Defendants failed to use their best efforts to secure other funding for the health center.

10.     Defendants engaged in the waste of federal grant money, specifically by purchasing expensive and unnecessary dental equipment.

11.     On information and belief, Defendants improperly commingled funds received from the Georgia Empowerment Zone with Section 330 funds.

12.     Defendants failed to allow Parato an appropriate level of authority to lead and manage the health center and denied her full control over selecting and dismissing all staff assigned to the health center.

13.     On information and belief, Defendants submitted false claims for services to Medicare and Medicaid.

14.     Defendants submitted patient bills to Medicare and Medicaid under the provider number for Dr. Gregory L. Hopkins, who was not an employee of the health center for the dates being billed.

15.     On information and belief, Defendants submitted patient bills to Medicare and Medicaid for patients never seen by UnaHealth.

> 16.    Defendant Whyte instructed the billing staff to unlawfully change billing codes for reimbursement purposes and to unlawfully bill under false provider numbers.

(Doc. 37).

## III.    ANALYSIS

### A.    The False Claims Act

The False Claims Act ("FCA") provides that any person who undertakes certain specified acts shall be liable to the government for civil penalties for such conduct.  31 U.S.C. § 3729(a)(1)-(7).   Under the FCA, and within certain limitations, a private citizen, who is referred to as a relator, may bring a civil action for violations of § 3729. 31 U.S.C. § 3730(b).  Parato does not specify which subsection(s) of the FCA she contends Defendants violated, but it appears to the Court that at the very least, she contends Defendants violated § 3729(a)(1)(A), which provides for liability as to any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval," and § 3729(a)(1)(B), which provides for liability as to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. §§ 3729(a)(1)(A)-(B).[4]

_____

[4]31 U.S.C. § 3729 was amended in 2009 by the Fraud Enforcement and Recovery Act of 2009 ("FERA").  Pub. L. No. 111-21, 123 Stat. 1617.  The amended version of subparagraph (A) is not applicable here because it applies only to conduct on or after the date of enactment, which was May 20, 2009.  Subparagraph (B) took effect as if enacted on June 7, 2008, and applies to all claims under the FCA that were pending on or after that date.  For purposes of the FCA, a "claim" is defined as a "request or demand . . . for money or property."  31 U.S.C. § 3729(c). The revised version of section (a)(1)(B) does not apply to this case because none of Defendants' claims at issue here (the grant request or

**B.** **Federal Rules of Civil Procedure 12(b)(6) and 9(b)**

Defendants first argue that Count One of the complaint and amended complaint should be dismissed under Rule 12(b)(6) for failing to state a claim under the FCA. Defendants contend that both the Section 330 grant claim and the Medicare fraud claim fail to state a claim upon which relief may be granted.

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). A plaintiff is required, however, to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Alternatively, Defendants argue that Count One of the amended complaint should be dismissed because Parato has failed to meet her heightened obligation under Rule 9(b) to state an FCA claim with particularity.

The general rule in federal court is that a complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, when the complaint sets forth a claim of fraud, more particularized pleading is required: "In all averments of fraud or mistake, the

---

Medicare reimbursement claims) were pending on or after June 7, 2008. *See* United States v. Sci. Applications Intern. Corp., --- F.Supp.2d ---, 2009 WL 2929250 at *14 (D.D.C. Sept. 14, 2009).

circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The particularized pleading requirements of Rule 9(b) apply to actions under the FCA.  United States *ex rel.* Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1308-09 (11th Cir. 2002).  In an FCA action, therefore, "a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Id. at 1310 (quoting United States *ex rel.* Cooper v. Blue Cross & Blue Shield of Fla., 19 F.3d 562, 567-68 (11th Cir. 1994) (per curiam)).  The failure to satisfy Rule 9(b) is a ground for dismissal of a complaint.  Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005).

The Eleventh Circuit has concluded that an FCA action is a fraud action. Furthermore, the Eleventh Circuit has declared that a relator in an FCA action must do more than merely allege a private scheme; the relator must provide within the complaint "some indicia of reliability . . . to support the allegation of *an actual false claim* for payment being made to the Government." Clausen, 290 F.3d at 1311 (italics in original).  In Clausen, therefore, the Eleventh Circuit upheld the district court's dismissal of an FCA action because the appellate court found that the relator's "failure to allege with any specificity if–or when–any actual improper claims were submitted to the Government" was fatal to the case.  Id. at 1312.

### 1.      Section 330 grant claim

### a.      Rule 12(b)(6)

Defendants state that Parato is proceeding with a "legally false certification" theory with regard to the Section 330 grant claim.  Under that theory, "an entity is liable for falsely representing itself as having complied with applicable regulations in connection with the receipt of federal funds." Rodriguez v. Our Lady of Lourdes Med. Ctr., 552 F.3d 297, 303 (3d Cir. 2008).  According to Defendants, Parato's claim is based upon the contention that Defendants falsely certified that UnaHealth's grant applications met all requisite HHS regulations related to the grant.

To state a claim under a false certification theory, "it is necessary to allege not only a receipt of federal funds and a failure to comply with applicable regulations, but also that payment of the federal funds was in some way conditioned on compliance with those regulations." Id.  Defendants argue that Parato has not cited to any authority to show that payment of a Section 330 grant is expressly conditioned on certification of 100% compliance with all regulations, and that the regulations to which she has pointed do not relate to payment of the grant money, but instead relate to, for instance, use of the money.[5]

---

[5]Defendants also rely on HHS Grants Policy Statement II-92 (Jan. 1, 2007) to support their argument that Parato's Section 330 grant claim fails to state a claim. Defendants argue, based on the policy statement, that it is up to HHS to handle noncompliance with the terms of a Section 330 grant, not relators.  As a general rule, the analysis of a Rule 12(b)(6) motion is limited to the face of the complaint and attachments thereto. Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997).  The policy statement, however, was not referenced by Parato in either her initial complaint or amended complaint, and was not attached to either.  Thus, the policy statement is a matter outside the pleadings for purposes of Rule 12(b)(6).  If the Court were to consider the policy statement, it would be obliged to convert the Motions to ones for summary

Parato argues, on the other hand, that she sufficiently alleges that Defendants certified non-existent compliance with the assurances required by the grant application as an express condition of receipt of the grant money.  She also points to allegations in her complaint and amended complaint which state that, under the applicable regulations, signing the grant application and agreeing to abide by the standards set forth therein were a condition precedent to receipt of the funding, and further that the regulations require specific conduct after the funds have been awarded.

Parato alleges in her complaint and amended complaint that in order to gain approval as a FQHC and receive Section 330 funding, UnaHealth had to certify that it "[w]ill establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain" and "[w]ill comply with all applicable requirements of all other federal laws, executive orders, regulations and policies governing this program."  (Doc. 3, pp. 11-12; Doc. 37, pp. 13-14).  She goes on to allege that Defendants "expressly misrepresented compliance with the terms and conditions of

_____

judgment.  Fed. R. Civ. P. 12(d).  The Court does not believe it is in the best interest of the parties to convert the Motions at this time.

Defendants argue that the Court should take judicial notice of the policy statement and take it into account when deciding the Motions.  Parato has objected to this proposal.

The Court declines to take judicial notice of the 2007 policy statement.  It appears that the statement does not even apply to the grant at issue.  While Defendant Whyte provided selected portions of grant policy documents from 2006 and 1994, there appear to be questions about their applicability as well.  Determining which, if any, of the grant documents apply to the Section 330 grant is an endeavor which is better addressed on summary judgment or at trial.  Thus, the Court will not consider any of the policy statements or documents in ruling on the Motions.

the grant award, and did so knowingly, when it submitted its grant applications to the HHS," and that Defendants "knowingly violated the terms and conditions of the grant award" by "allowing employees and board members to use their position for a purpose that constitutes or presents a conflict of interest or the appearance of a conflict of interest," among other things.  (Doc. 37, p. 20).

Defendants rely heavily on the Tenth Circuit decision in United States *ex rel.* Conner v. Salina Regional Health Center, Inc., 543 F.3d 1211 (2008), to support their position.  There, the relator, an ophthalmologist and eye surgeon, alleged that the defendant hospital violated the FCA by submitting false certifications that it was in compliance with Medicare statutes and regulations.  The district court and Tenth Circuit determined that the defendant's allegedly false certification that it was in compliance with Medicare statutes and regulations, contained in an annual cost report, could not form the basis for a cause of action under the FCA.  This was because the Medicare statues and regulations did not expressly condition compliance with certification requirements as a prerequisite to receiving government payments.  The defendant was required to make a certification with each annual cost report which stated, in part:  "I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations."  Id. at 1218-19.  The Tenth Circuit noted that while this certification represented compliance with underlying laws and regulations, "it contains only general sweeping language and does not contain language stating that payment is conditioned on perfect compliance

with any particular law or regulation.  Nor does any underlying Medicare statute or regulation provide that payment is so conditioned."  Id. at 1219.

Looking to Conner, Defendants argue that Parato's complaint fails to state an FCA claim for grant fraud because none of the regulations cited by Parato expressly or implicitly require compliance as a prerequisite for payment.  The Court, however, finds Conner distinguishable.  Conner deals with Medicaid rules and requirements, which are beasts unto themselves and do not govern the Section 330 grant at issue. Further, UnaHealth was a grant applicant for government funds, not a contractor participating in a program to perform services and then bill the Government for payment like the defendant in Conner.  While the Conner court granted the defendant's motion to dismiss because "payment was not expressly conditioned on defendant's certification," here Parato clearly alleges that UnaHealth's certification of compliance was a prerequisite to, or condition of, payment.

To the extent Defendants argue that the certification of compliance was not a condition of payment but a condition of participation in the Section 330 grant program, that argument also fails.  In the context of a grant award, the distinction between participation in the program and a condition of payment collapses.  See United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166 (9th Cir. 2006).  Absent UnaHealth's certification that it would comply with certain assurances and various laws, regulations, and policies, it would not have been awarded the grant.  The Court also notes that under 42 C.F.R. § 51c.302, UnaHealth's application could not have been approved absent the assurance that the project would be conducted in

accordance with the applicable requirements of the regulations.  That assurance, a condition of payment, was given when Defendant Irwin signed the application on behalf of UnaHealth.

Viewing the allegations of the complaint and amended complaint in Parato's favor, the Court finds that with regard to the Section 330 grant claim, this case survives a Rule 12(b)(6) challenge.  While Parato's allegations may not be able to withstand the scrutiny of a motion for summary judgment, that is for the Court to address on another day.

### b.    Rule 9(b)

The UnaHealth Defendants also argue that the complaint and amended complaint "fail[] to identify even a single 330 Grant false claim . . . that was submitted to the United States" and "fail[] to specify the actors participating in the alleged fraud, or the time, place or substance of the Defendants' alleged fraud."  (Doc. 41-2). Defendant Whyte similarly argues that Parato failed to identify "even one, single 'false' claim or statement supporting her theory of culpability. . . ."  (Doc. 40).

The Court finds that Parato's Section 330 claim meets Rule 9(b)'s particularity requirement.  She identifies when the grant application was submitted, who signed the application, the certifications and assurances made in connection with the application and subsequent continuation requests, when the funding was received, and when UnaHealth applied for a continuation of the grant.  She also makes specific allegations about Defendants allowing Defendants Whyte and Shewman to engage in actions that would constitute a conflict of interest, Defendants' improper use of the grant money,

and Defendants' failure to establish a proper accounting system.  Parato has properly alleged facts as to time, place, and substance of Defendants' fraud relating to the Section 330 grant.

### 2.    Medicare claim

#### a.    Rule 12(b)(6)

For purposes of this Order only, the Court will assume that Parato's Medicare claim is not subject to dismissal under Rule 12(b)(6) for failure to state a claim.  This is because the Medicare claim is subject to dismissal under Rule 9(b), as discussed further below.

#### b.    Rule 9(b)

The UnaHealth Defendants argue that the complaint and amended complaint "fail[] to identify even a single . . . Medicare or Medicaid claim that was submitted to the United States" and "fail[] to specify the actors participating in the alleged fraud, or the time, place or substance of the Defendants' alleged fraud."  (Doc. 41-2). Defendant Whyte similarly argues that Parato failed to identify "one, single 'false' claim supporting her theory of alleged improper billing methods, specifically billing for patients not seen, billing for services not provided, or billing with an improper provider number." (Doc. 40).  While Defendant Whyte acknowledges that Parato provided the name of the physician whose provider number allegedly was used to submit bills to Medicare, he states that she "fails to identify who used the provider number inappropriately, when the provider number was allegedly used inappropriately, and which claims were inappropriately submitted."  (Doc. 40).

Parato argues in response that her complaint and amended complaint identify with specificity facts as to time, place, and substance, and the allegations bear sufficient indicia of reliability.   Parato alleges in her amended complaint that Defendants billed Medicare for services using the provider number of a physician, Dr. Gregory L. Hopkins, who did not provide the services and was not an employee of the Defendants for the dates being billed.   She also alleges based on information and belief that Defendants billed for services not performed and for patient visits of UnaHealth employees, which visits never occurred.   Specifically regarding Defendant Whyte, Parato alleges that he instructed the billing staff to unlawfully change codes for reimbursement purposes and to unlawfully bill under false provider numbers.   (Doc. 37).

According to Parato, she has sufficiently addressed the "who, what, where, when, and how" of the fraudulent submissions to survive a Rule 9(b) challenge.   As for "when," Parato states that the billing fraud she alleges had to occur between April 4, 2005, when UnaHealth started operating, and August 30, 2005, when she was fired. As for "who," the only name provided regarding the Medicare claim is Defendant Whyte, who allegedly instructed unnamed billing staff members to use improper codes when billing Medicare and to bill under improper provider numbers.

Parato relies on the unpublished Eleventh Circuit decision of Hill v. Morehouse Medical Associates, Inc., No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003), to support her position that Rule 9(b) has been satisfied.   Defendants, on the other hand, rely on United States ex rel. Clausen v. Laboratory Corp. of America, Inc., 290

F.3d 1301 (11th Cir. 2002), to support their position that the Medicare claim is not pleaded with particularity and should be dismissed.

The relator in Hill worked as a certified professional coder and biller for Morehouse Medical Associates, Inc. ("MMA"), a professional services organization established by the faculty of the Morehouse School of Medicine to provide medical care to the sick.  In her amended complaint, the relator alleged that MMA violated the FCA by routinely altering billing codes, and thereby submitting fraudulent claims to the government.  Id. at *2.  She alleged she was aware that the false claims under the billing schemes were submitted to the government, but stated that she could not identify patient names nor the exact dates that the claims were submitted to Medicare, because the documents containing the information were in MMA's exclusive possession.  Id.  The relator identified these confidential documents as the patient charts and encounter forms for patient visits, the forms submitted to the government for reimbursement, and explanation of benefits forms, which explain why claims were rejected.  Id.  MMA moved to dismiss the amended complaint because it did not allege fraud with particularity in compliance with Rule 9(b).  The district court granted the motion.

The Eleventh Circuit reversed the district court on appeal.  The court first noted that the relator worked in the department where she alleged the fraudulent billing schemes occurred.  She had firsthand information about MMA's internal billing practices and the manner in which the fraudulent billing schemes were implemented. The relator also alleged that she observed MMA billers, coders, and physicians alter

various CPT and diagnosis codes, and thus submit false claims for Medicare reimbursement to the government.  She identified confidential documents within MMA's exclusive possession that contained additional evidence of the fraud, and also provided facts describing MMA's billing process, the specific CPT and diagnosis codes that were altered for each of the five billing schemes, and the frequency of submission of each type of claim.  The relator was also able to provide the names of some of the employees and physicians who were responsible for making the fraudulent changes and the clinics where the codes were altered.  Id. at *4.  Even without the allegation of a specific false claim, the Eleventh Circuit found that the amended complaint satisfied  Rule 9(b), as it contained facts regarding the fraudulent billing which were supported by the relator's firsthand observation of the fraudulent conduct.

In Clausen, on the other hand, the Eleventh Circuit found that the relator's complaint, as amended, did not meet the particularity requirements.    The Clausen relator was a competitor of a medical testing services company.  He alleged that the company performed unauthorized, unnecessary, or excess medical tests on patients in long-term care facilities.  The relator detailed six schemes that the company engaged in and further alleged that these schemes resulted in the submission of false claims to the government.  Although the amended complaint offered significant detail about the nature of the schemes and the manner in which they would have been carried out, the relator did not provide specific dates or the amounts of claims that were alleged to have been falsely submitted.  The district court dismissed the

complaint, finding that it failed to satisfy the particularity requirements of Rule 9(b). 290 F.3d at 1307.

On appeal, the Eleventh Circuit affirmed the dismissal of the complaint. While the relator set out the process by which the defendants could have produced false claims, the court found that the relator provided no facts that would show that the process did in fact result in the submission of false claims. The Eleventh Circuit concluded that the complaint suffered from "a lack of specific information about the actual submission of claims to the Government." Id. at 1311. The court further noted that, in the absence of specific information, it was unwilling to assume that the defendant actually billed the government for the tests it ordered. Id. at 1313 n. 23. The court found that the absence of specific information about the submission of claims was fatal to the relator's complaint, noting that "the 'true essence of the fraud' of a False Claims Act action involves an actual claim for payment and not just a preparatory scheme." Id. at 1312 n.21. The court stressed that the submission of a claim is the *sine qua non* of an FCA violation. Id. at 1311.

Since deciding Clausen and Hill, the Eleventh Circuit has had several opportunities to address the Rule 9(b) particularity requirement in the context of an FCA case. In October of 2005, the court decided Corsello v. Lincare, Inc., 428 F.3d 1008 (11th Cir. 2005). There, the relator alleged that while he was employed by two of the defendants, they and other entities violated the FCA by submitting false Medicare claims. Id. at 1011. The district court dismissed the complaint, as amended, for failure to plead fraud with particularity. Id. at 1011.

On appeal, the Eleventh Circuit upheld the dismissal.  The relator argued that he was "aware" of the manner by which the defendants submitted fraudulent claims. He also argued that his complaint contained the "indicia of reliability" required by Clausen and Rule 9(b) because the complaint alleged details of schemes, employees, and claims, and also provided the initials of patients whose Medicare forms were improperly completed and eventually "resulted in the submission of fraudulent claims." The relator further alleged that a pattern of improper practices of the defendants led to the inference that fraudulent claims were submitted to the government.  Id. at 1013. The court held that the relator's complaint failed to allege when, where, and what violations of the FCA occurred, but instead made vague allegations that improper practices took place "everywhere Lincare does business throughout the statutory time period."  Id. at 1013.  The court also stated that the allegations, which were often based "on information and belief," lacked the "indicia of reliability" required by Clausen because they did not provide an underlying basis for his assertions.  Id. at 1013-14. Specifically,

> Corsello did not explain why he believes fraudulent claims were ultimately submitted.  Corsello's contention that he was "aware" of billing practices was neither particular to any specific fraudulent claim against the government nor factually supported because Corsello conceded that he "did not have access to company files outside his own offices." Underlying improper practices alone are insufficient to state a claim under the False Claims Act absent allegations that a specific fraudulent claim was in fact submitted to the government. *Clausen*, 290 F.3d at 1311.  In short, Corsello provided the "who," "what," "where," "when," and "how" of improper practices, but he failed to allege the "who," "what," "where," "when," and "how" of fraudulent submissions to the government.

Id. at 1014.

The Eleventh Circuit next considered an FCA claim based on Medicare submissions in United States ex rel. Atkins v. McInteer, 470 F.3d 1350 (11th Cir. 2006).  The relator in that case was a psychiatrist who provided services to residents of Alabama skilled nursing facilities.  He filed an FCA action against two other psychiatrists, their company, and several skilled nursing facilities in which he alleged that between March 2000 and March 2003, the defendants submitted false and fraudulent Medicare claims for psychiatric services purportedly rendered and obtained reimbursement for the services.  The relator specifically alleged that the defendants received reimbursement for psychiatric services that were:  "(1) not rendered, (2) not medically necessary, (3) the result of improper 'upcoding,' (4) grounded in psychiatric evaluations provided by unqualified staff personnel, (5) based upon 'pre-formed,' predetermined sets of patient evaluations, diagnostic codes, and treatment plans, and (6) provided with substandard levels of care."  Id. at 1354.  The district court dismissed the complaint for failure to comply with Rule 9(b).

The Eleventh Circuit affirmed the dismissal, stating that "the complaint fails rule 9(b) for want of sufficient indicia of reliability to support the assertion that the defendants submitted false claims."  Id. at 1358-59.  Even though the relator cited particular patients, dates, and corresponding medical records for services that he contended were not eligible for government reimbursement, his claim failed because he did not show that the defendants actually submitted reimbursement claims for the services he described.  "Instead, he portrays the scheme and then summarily

22

concludes that the defendants submitted false claims to the government for reimbursement." Id. at 1359.  Unlike the relator in Hill, the Atkins relator did not have firsthand knowledge of the defendants' submission of false claims.  Id.

While the decision is unpublished, the Court believes it appropriate to also reference the Eleventh Circuit's decision in Mitchell v. Beverly Enterprises, Inc., 248 Fed. Appx. 73 (11th Cir. 2007).  The Mitchell relator alleged in his complaint that the defendant submitted claims to Medicare for services that were never rendered, for more reimbursement than that to which it was entitled, and for services which were not medically necessary.  Although the complaint alleged that the relator "observed and participated in the billing process," he did not provide specific facts regarding the actual submission of any claims to Medicare.  Id. at *2.  The Eleventh Circuit found that the relator did not state his fraud claim with particularity because he did not go past pleading "his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government" by alleging specific facts as to who submitted the bills to Medicare, how they were submitted, or when they were submitted.  Id.

In her amended complaint, Parato makes the following allegations regarding Defendants' alleged Medicare fraud:

62.

Defendants violated the False Claims Act by perpetrating and participating in various  schemes to defraud the United

23

States Government.  These activities have included various Federal financial aid programs in which Defendants have participated.   At all times relevant to this Complaint, Defendant UnaHealth was a participating Medicare Part B provider.  Defendants submitted false claims to Medicare, and other federal healthcare reimbursement programs such as Medicaid, for services.

63.

Defendants pursued ways to cost the United States Government more money for improper or unnecessary goods and services.   Indeed, Defendants fraudulently submitted to federal healthcare programs patient bills under a false provider number.  Specifically, Defendants submitted bills under the provider number for Dr. Gregory L. Hopkins who was not an employee of the Defendants for the dates being billed.   On information and belief, Defendants fraudulently submitted to federal healthcare programs patient bills for patients never seen by UnaHealth in order to obtain improper payments from the government.

64.

Defendants failed to adhere to the requirements of Medicare and other federal healthcare programs including, but not limited to the following:

A.    On information and belief, Defendants billed for services not performed.

B.    Defendants billed for services using a provider number of a physician who did not provide the services and no longer was employed by UnaHealth.

C.    On information and belief, Defendants billed for patient visits of UnaHealth employees, which visits never occurred.

65.

Consultant Dr. Bruce Whyte instructed the billing staff to unlawfully change codes for reimbursement purposes.

66.

Consultant Dr. Bruce Whyte instructed the billing staff to
unlawfully bill under false provider numbers.

Parato goes on to state in Count One, violation of the FCA:

73.

By virtue of the acts described above, Defendants knowingly
presented, or caused to be presented, false or fraudulent
claims for payment to the United States Government, and
knowingly failed to disclose material facts, in order to obtain
Government payment.

(Doc. 37).

In her memoranda to the Board of Directors dated August 26, 2005, which is
attached to the amended complaint, Parato stated that she had "grave concerns about
the following:  Dr. Whyte's instruction to staff to use the provider number of a provider
no longer with Unahelath (sic) to file claims is fraudulent; . . ."  (Doc. 37-6).

A review of Parato's allegations relating to the Medicare fraud shows that she
has not met the Rule 9(b) particularity requirement.  While her allegations concern a
generally specific time period, April 4, 2005, until August 30, 2005, Parato has
provided no specific details concerning any particular false claim submitted to the
government.  She has not provided the amounts of charges, any actual dates, or the
particular goods and services for which the government was billed.  She has not
described any policies about billing, has not supplied the names of the persons
involved in the billing, and has not provided a copy of any bill or payment.  The
Eleventh Circuit made clear in Clausen that "some of this information for at least some
of the claims must be pleaded in order to satisfy Rule 9(b)."  Clausen, 290 F.3d at

1312 n. 21.  All Parato has provided are conclusory statements that fraudulent bills were submitted.

The Court finds the Sixth Circuit cases of United States *ex rel.* Bledsoe v. Community Health Systems, Inc., 342 F.3d 634 (2003) (Bledsoe I), and 501 F.3d 493 (2007) (Bledsoe II), instructive on this particular issue.  In Bledsoe I, the relator alleged, among other things, that the defendants misused a doctor's medical provider number in the emergency room.  342 F.3d at 638.  The district court dismissed the relator's first amended complaint for failure to plead fraud with particularity.  That decision was affirmed by the Sixth Circuit, which stated that "the amended complaint failed to set forth dates as to the various FCA violations or any particulars as to the incidents of improper billing Relator supposedly witnessed first-hand.  Additionally, the amended complaint did not specify the names of any individuals involved in the improper billing, save for Dr. Adams, who was allegedly terminated in retaliation for refusing to engage in the fraudulent billing practices.  Indeed, the amended complaint often states that 'Defendants' engaged in certain practices, without ever specifying the defendants to which it was referring."  Id. at 643.  The relator was given the opportunity to amend his complaint.

In his second amended complaint, which is the focus of Bledsoe II, the relator specifically alleged that the defendants billed Medicare for professional services under the provider number of a physician who had not provided those services.  The relator identified by name the physician whose provider number was allegedly improperly used.  501 F.3d at 511.  He also alleged that the defendants "submitted numerous bills

to Medicare and Medicaid that did not qualify for payment."  Id.  The district court again dismissed the claim for being deficiently pled because the relator "[did] not identify any allegedly false claims or their submission to the Government, which employees of Defendants allegedly misused Dr. Hoyt's number, or whether such employees worked for CHS, White County, or White County's new management company."  Id. at 512. The Sixth Circuit affirmed the dismissal, stating that the second amended complaint "remain[ed] devoid of any incidents of improper billing that are pled with particularity. This deficiency is fatal to Relator's allegations."  Id.

While Parato urges the Court to equate her situation to that of the relator in Hill because they both alleged to have firsthand knowledge of the submission of false claims, the Court does not find such a comparison appropriate.  The relator in Hill alleged that she personally watched billers, coders, and physicians change diagnosis codes in order to receive higher Medicare reimbursements and so that claims would be accepted.  She identified the types of codes allegedly changed, the employees who were responsible for making these changes, and how often the fraudulent conduct occurred.  2003 WL 22019936 at *1, *4-5, n. 4.  Parato did not provide any comparable detail.  Many of her contentions are based on information and belief, and while she alleges that Defendant Whyte instructed the billing staff to change codes and bill under improper provider numbers, she does not take the next step and provide facts establishing that the staff actually followed these instructions and submitted fraudulent bills to the government.  She has not alleged that she personally saw anyone change codes, which appears key to the Hill decision.  She has not provided

27

any supporting documentation, and "has not provided dates on which the purportedly false [claims] were submitted, nor has she alleged who submitted the purportedly false [claims], nor has she alleged any other specific information about the [claims] allegedly submitted."  United States ex rel. Marlar v. BWXT Y-12, LLC, 525 F.3d 439, 446 (6th Cir. 2008).[6]

Parato argues that because the records that reflect the alleged fraud are in Defendants' exclusive custody and control, the Rule 9(b) pleading standard should be relaxed, as the Eleventh Circuit permitted in Hill.  Under such a relaxed standard, a relator may make allegations based on information and belief, which Parato has done in her complaint and amended complaint.  What Parato has not done, however, is set forth a factual basis for her beliefs, which is still required even under the lesser standard.  See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997).  In neither her complaint nor her amended complaint did Parato provide any factual basis for her beliefs that Defendants fraudulently submitted patient bills for patients never seen and for services not performed.  Thus, her Medicare claim still fails under Rule 9(b).

Interestingly, at least one district court has found that because a Medicare claim is submitted to the government, it is not within the defendant's exclusive possession and does not warrant a relaxed pleading standard for Rule 9(b) purposes.  See

---

[6]The Court notes that Hill is not binding precedent.  On the other hand, Clausen, Corsello, and Atkins are binding precedent.  Further, even if Hill was a published opinion, under the prior panel rule, Clausen would supercede Hill to the extent the cases are inconsistent.  Atkins, 470 F.3d at 1358 n. 15.

Bantsolas <u>*ex rel.* United States v. Superior Air & Ground Ambulance Transp., Inc.</u>, No. 01 C 6168, 2004 WL 609793 at *4 (N.D. Ill. March 22, 2004) (not reported).  The Fifth Circuit has also held that the relaxed standard was not applicable where "documents containing the requisite information were possessed by other entities, such as the Healthcare Financing Administration."[7]   <u>United States ex rel. Russell v. Epic Healthcare Mgt. Group</u>, 193 F.3d 304, 308 (5th Cir. 1999).  In any event, the Court does not believe the relaxed standard is warranted here.

## VII.   CONCLUSION

The Court finds that Parato has set forth allegations relating to the Section 330 grant sufficient to satisfy Rule 12(b)(6) and Rule 9(b).  Parato's claim relating to Medicare, however, is not pled with sufficient particularity to satisfy the requirements of Rule 9(b).  Therefore, Defendants' Motions to Dismiss (Doc. 27, 39, and 41) are granted, in part, and denied, in part.  Defendants' Motion for a More Definite Statement (Doc. 27) is denied.

Federal Rule of Civil Procedure 12(a)(4) provides that when a district court denies a motion to dismiss, the moving party's responsive pleading is to be served within 14 days after notice of the court's action on the motion to dismiss.  Fed. R. Civ. P. 12(a)(4)(A).  Pursuant to this Rule, therefore, because Defendants filed Motions to Dismiss in lieu of answers, they are required to serve a responsive pleading within 14 days after notice of this Order.

---

[7]The Healthcare Financing Administration is now known as the Centers for Medicare and Medicaid Services.

**SO ORDERED**, this the 11th day of January, 2010.

_s/   Hugh Lawson_
**HUGH LAWSON, SENIOR JUDGE**

mbh