**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA ex rel.** ) | |
| **ANGELA PARATO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:07-CV-76 (MTT)** |
| ) | |
| **UNADILLA HEALTH CARE CENTER,** ) | |
| **INC., JAMES RAY IRWIN, BOB** ) | |
| **LEMMON, CHARLOTTE VESTAL,** ) | |
| **LEROY SHEWMAN, GRED SPEIGHT,** ) | |
| **E.K. CHANEY, RONNY LEDFORD,** ) | |
| **BETTY WARD, MARGARET** ) | |
| **WHITEHEAD, SHERRY EVANS,** ) | |
| **BARBARA GASTON, and BRUCE** ) | |
| **WHYTE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**ORDER**

This matter is before the Court on the Defendants' Motions for Summary

Judgment (Docs. 73 & 75). The Defendants also filed Motions to Strike (Docs. 81 & 83)

the Plaintiff's affidavit filed in response to their Motions for Summary Judgment (Doc.

77-7). With regard to the Defendants' Motions to Strike, the Defendants argue primarily

that the Plaintiff's affidavit contains information that is outside the realm of her personal

knowledge. However, the Plaintiff asserts that her factual assertions are true and

correct and "based on her personal knowledge." Accordingly, at this stage of the

proceedings, there is no merit to the Defendants' objections. Therefore, the

Defendants' Motions to Strike are **denied**.

## I.    OVERVIEW AND PROCEDURAL HISTORY

On March 2, 2007, Plaintiff Angela Parato filed a *qui tam* complaint (Doc. 3) against Defendant Unadilla Health Care Center, Inc. ("UnaHealth") and members of its governing body.  Pursuant to 31 U.S.C. § 3730(b)(2), the Complaint was placed under seal to allow the United States an opportunity to investigate the matter and decide whether to pursue Parato's allegations.  After counsel for the United States filed a Notice of Election to Decline Intervention (Doc. 14), the Complaint was unsealed, and Parato proceeded on her own as a relator.

On September 18, 2009, Parato filed her first Amended Complaint (Doc. 37) against all Defendants, in which she alleged the Defendants were liable for federal grant fraud, Medicare/Medicaid fraud, retaliatory conduct in violation of the False Claims Act ("FCA"), and breach of contract.  The Defendants timely filed Motions to Dismiss (Docs. 39 & 41), which this Court, Judge Lawson presiding, granted, in part, and denied, in part.  Parato's Medicare/Medicaid fraud claim was not pled with sufficient particularity and was, therefore, dismissed, while her remaining claims were sufficiently pled to avoid dismissal (See Doc. 51).  Discovery has expired, and the Defendants' Motions for Summary Judgment are now ripe for review.

## II.    FACTUAL BACKGROUND[1]

On November 7, 2002, UnaHealth was formed as a Georgia non-profit corporation with the goal of becoming a Federally Qualified Health Center and receiving a public health service grant under Section 330 of the Public Health Service Act

---

[1] It bears mentioning that the parties took no discovery depositions.  The record essentially consists of documents and dueling affidavits, and the Court does not have the benefit of cross-examination to test the parties' allegations.  It is hard to say whether the absence of deposition testimony hurts or helps any party, but it is curious.

("Section 330"), as codified at 42 U.S.C. § 254b. Defendants James Ray Irwin, Bob Lemmon, Charlotte Vestal, Leroy Shewman, Greg Speight, E.K. Chaney, Ronney Ledford, Betty Ward, Margaret Whitehead, Sherry Evans, and Barbara Gaston were members of UnaHealth's Board of Directors (the "Board") during the time period in question.

On December 1, 2004, UnaHealth received a $650,000.00 Section 330 grant from the Department of Health and Human Services ("HHS"). Section 330 authorizes federal grant funding opportunities for organizations to provide care to underserved populations. The grant was issued pursuant to an application submitted by UnaHealth on November 25, 2003.[2] As part of the application, Defendant Irwin, as UnaHealth's authorized representative, certified that UnaHealth "[w]ill establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain" and that it "[w]ill comply with all applicable requirements of all other Federal laws, executive orders, regulations and policies governing this program." Parato alleges that these assurances were necessary for UnaHealth to gain approval as a Federally Qualified Health Center and to receive Section 330 funding. According to Parato's Amended Complaint, UnaHealth would receive approximately $1,950,000.00 in government funding during the three-year duration of the Section 330 grant, which was to be used exclusively for the operation of the health center.

In addition to the assurances included in the November 2003 application, by accepting the Section 330 grant from HHS, UnaHealth agreed to operate the center

---

[2] UnaHealth first submitted an application for federal assistance on February 18, 2003. The February 18, 2003, application was denied.

pursuant to the terms and conditions included in the HHS Notice of Grant Award (Doc. 73-8). Among the terms and conditions included in the HHS Notice of Grant Award is the following: "THIS AWARD IS … SUBJECT TO THE TERMS AND CONDITIONS INCORPORATED EITHER DIRECTLY OR BY REFERENCE IN THE FOLLOWING … d. 45 C.F.R. Part 74 or 45 C.F.R. Part 92 as applicable." Parato relies on the "Post-Award Requirements" found in the incorporated regulations, specifically, 45 C.F.R. § 74.42, which provides

> [n]o employee, officer, or agent shall participate in the selection, award, or administration of a contract supported by Federal funds if a real or apparent conflict of interest would be involved. Such a conflict would arise when the employee, officer, or agent … or an organization which employs or is about to employ any of the parties indicated herein, has a financial or other interest in the firm selected for an award.

On December 14, 2004, after receiving the Section 330 grant funds but before commencing operation, UnaHealth obtained a price quote from Companion Technologies Corporation, a medical software company, for computer equipment necessary to the proper functioning of the health center. Shortly thereafter, on December 16, 2004, the UnaHealth Board hired Defendant Dr. Bruce Whyte to serve as "interim CEO" on an as-needed basis until a full-time CEO was hired. As we will see, Parato alleges Whyte was a "consultant" for Companion Technologies. As interim CEO, Defendant Whyte was responsible for hiring employees, overseeing the installation of a new computer system, and ensuring that the Board adopted all appropriate policies and procedures during the start-up period. Also, as part of his job description, Defendant Whyte was to assist the Board in finding and selecting a full-time CEO and, after doing so, was

to remain in UnaHealth's employ to assist in the newly hired full-time CEO's initial time at the center.

On January 27, 2005, UnaHealth finalized the purchase of a complex computer system from Companion Technologies for over $109,000.00, presumably to be paid using grant funds. The sales order acknowledging the purchase of the equipment was signed by Defendant Whyte on behalf of UnaHealth.

On February 14-15, 2005, UnaHealth was evaluated by a representative of the Bureau of Primary Health Care ("BPHC"), a sub-agency of the Department of Health and Human Services. Following the site visit, BPHC wrote UnaHealth a letter (Doc. 73-10) documenting the evaluation and providing suggestions for moving forward. According to the letter, the purpose of the BPHC site visit was to assist UnaHealth in developing a technical assistance plan and to provide feedback that would improve the viability of the health center.[3]

On July 7, 2005, after conducting a telephone interview and an in-person interview with Plaintiff Angela Parato, the Board formally voted to offer Parato the position of full-time CEO of UnaHealth, a position she had informally been offered in May 2005. Parato, the recipient of a post-graduate fellowship in Medical Ethics and the Law from the University of Nebraska Medical Center, spent the six years prior to her arrival at UnaHealth in leadership roles at various community health centers in California. During this time, Parato performed many

_____

[3] Although there is no evidence that the BPHC evaluation specifically addressed any matter that became the subject of Parato's allegations, the Defendants cite the visit as evidence that BPHC uncovered no significant wrongdoing and that the Defendants were doing their best to comply with all applicable federal requirements.

of the same duties she would be asked to perform once she began work for UnaHealth. Parato was offered the position by letter, and she accepted the position based on the terms set forth in that offer letter (Doc. 77-7).

According to Parato, in addition to the terms contained in the offer letter, the Board agreed to reimburse her for all expenses associated with her travel to the in-person interview, attendance at a grantee meeting, and relocation expenses. It is not disputed that Parato has not been reimbursed by UnaHealth for these expenses. Both parties admit that Parato received Check #442 from UnaHealth, which included "recruitment amounts" of $5,103.83. However, according to Parato, because this amount did not fully reimburse her for her relocation and travel expenses, she did not cash the check out of fear that doing so would release her claims against UnaHealth.

On August 2, 2005, UnaHealth applied for a continuation of the Section 330 grant, and based on that application, UnaHealth received continued funding from HHS. The August 2005 application was signed by both Defendants Irwin and Whyte, as UnaHealth's authorized representatives, and contained the same certifications and assurances as the November 2003 application. Again, according to Parato, these assurances were necessary in order for UnaHealth to maintain approval as a Federally Qualified Health Center and receive continued Section 330 funding. During this time, Defendant Whyte remained at UnaHealth as interim CEO.

Parato formally began work as UnaHealth's CEO on August 15, 2005. Among other things, Parato's duties included directing and reviewing the

development of budget and financial systems in order to assure compliance with all governmental and legal requirements, organizing staff and resources to carry out the Board's plans, administering the day-to-day activities of the health center, and supervising all other UnaHealth employees.

To put it mildly, Parato and Whyte did not get along. According to Parato, within one week of beginning work as CEO, she became aware of numerous deficiencies at UnaHealth, and she complained mightily about Whyte's refusal to relinquish his position as interim CEO and allow Parato to do her job. Most importantly to this litigation, Parato alleges that she discovered several problems concerning UnaHealth's noncompliance with federal grant requirements.

One of these problems was Whyte's alleged conflict of interest. According to Parato, Whyte, while serving as UnaHealth's interim CEO, was also a "consultant" for Companion Technologies, the company from which UnaHealth purchased over $100,000.00 of computer equipment and services in January 2005. Defendant Whyte's serving as interim CEO while simultaneously overseeing the purchase of Companion products and services on behalf of UnaHealth with federal grant funds, constituted a conflict of interest that was, in Parato's opinion, a violation of UnaHealth's duties under its grant funding requirements.[4] Parato alleges the Board was well aware of Defendant Whyte's affiliation with Companion Technologies, but that the Board simply did not understand or appreciate the significance of Whyte's actions.

---

[4] Whyte, in his affidavit, denies that his role as a Companion Technologies consultant had anything to do with UnaHealth's purchase of anything. Again, without the benefit of cross-examination, it is difficult to assess whether a conflict of interest actually existed. For the purpose of resolving these Motions, the Court assumes that Whyte had a conflict of interest when he served both as interim CEO and as a consultant for Companion Technologies.

Shortly after becoming aware of these alleged problems, Parato notified the Board of her concerns.  In a memorandum to the Board dated August 25, 2005 (Doc. 37-4), Parato stated that Whyte's "purchase of Companion Technologies equipment with federal funds as interim CEO/consultant is without question a conflict of interest that is in direct violation and breach of our grant application; the continuing application report, which I understand Dr. Whyte himself prepared and attests that conflicts of interest do not exist; and the law." Furthermore, in relaying her concerns that Whyte's actions were placing the center at risk, Parato stated that "just because something is not stipulated specifically in a statute does not make it any less illegal."

The next day, in another memorandum addressed to the Board (Doc. 37-5), Parato expressed her concerns regarding UnaHealth's alleged filing of fraudulent Medicare and Medicaid claims:  "there is no other agenda that the government looks toward eradicating more than claims fraud.  If staff follow [Whyte's] direction and this was discovered, and it is checked relentlessly by the government, honest, hardworking people could go to jail.  Claims filing is a complicated and highly scrutinized area as it is, to compromise staff in this way is simply unacceptable."

The morning of August 30, 2005, Defendants Irwin and Lemmon informed Parato that the Board had met on August 28 and 29 to discuss Parato's memoranda, and that another meeting was scheduled for the night of August 30. From approximately 8:00 a.m. until 12:00 p.m. that day, Parato was allowed limited access to UnaHealth's records, for use in explaining her concerns to the

Board.  According to Parato, "Irwin and Lemmon observed [her] actions continually and were present, with at least one person standing next to [her] the entire time until noon that day."  Parato claims she was not allowed access to all of the records she sought, and at approximately 1:00 p.m., she was placed on administrative leave and was escorted from the premises.

At the meeting with the Board on the night of August 30, Parato again informed the Board of her myriad concerns regarding UnaHealth's noncompliance with federal grant funding requirements.  After the meeting, Parato was informed by the Board that "her services at [UnaHealth] were no longer required."  According to Parato, she was then presented with a document that, if signed by Parato, would operate to release any claims she may have against UnaHealth, but Parato declined to sign the document.

### III.    DISCUSSION

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

### A. Abandoned Claims

In her Amended Complaint, Parato asserts three primary claims: (1) that UnaHealth committed fraudulent acts in violation of the FCA, 31 U.S.C. § 3729; (2) that Parato was terminated in retaliation for protected conduct, in violation of 31 U.S.C. § 3730(h), and; (3) that UnaHealth breached a contract to reimburse Parato for her relocation expenses. In support of her first claim, that UnaHealth committed fraud in violation of the FCA, Parato alleged twelve specific instances of conduct that violated the FCA. In UnaHealth's Motion for Summary Judgment, it addressed each of Parato's specific allegations of fraudulent conduct. However, in her Response to the Defendants' Motions for Summary Judgment (Doc. 77), Parato addresses only the alleged FCA violation arising from a purported conflict of interest and fails to address the remaining allegations of fraudulent conduct.[5] Although Parato briefly mentions several of these alleged fraudulent acts in her Statement of Material Facts, it is well settled that claims not raised in the plaintiff's motion for summary judgment or in opposition to the defendant's motion for summary judgment are deemed abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). "In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." *McIntyre v. Eckerd Corp.*, 251 Fed. Appx. 621, 626 (11th Cir. 2007). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it

---

[5] The Court suspects that Parato's failure to address certain claims was intentional. For example, Parato claimed that UnaHealth committed FCA fraud when it used an accrual accounting method rather than cash accounting. Evidence adduced by the Defendants debunks this claim. Indeed, the Defendants cite Parato's wrongheaded insistence that UnaHealth change its method of accounting as an example of why Parato was unqualified for her job.

on summary judgment.  Rather, the onus is upon the parties to formulate arguments."
*Id.*

Accordingly, those grounds asserted in Parato's Amended Complaint but not raised in her Response to the Defendants' Motions for Summary Judgment are abandoned and will not be considered by the Court in ruling on the Defendants' Motions.  Rather than list the claims she has abandoned, because they are numerous, the Court will instead list those that remain pending for review on summary judgment: (1) whether, because of an alleged conflict of interest, UnaHealth falsely certified compliance with federal grant funding requirements in its Section 330 grant applications; (2) whether UnaHealth terminated Parato in retaliation for protected conduct; and (3) whether Parato can assert state law breach of contract claims related to her claim for reimbursement of travel expenses.  The Court will address each of these arguments in turn.

### B. False Certification under the False Claims Act

The False Claims Act ("FCA") provides that any person who undertakes certain specified acts shall be liable to the government for civil penalties for such conduct.  31 U.S.C. § 3729(a)(1)-(7).  Under the FCA, and within certain limitations, a private citizen, who is referred to as a relator, may bring a civil action for violations of section 3729.  31 U.S.C. § 3730(b).

Parato does not specify which subsection(s) of the FCA she contends the Defendants violated, but it appears to the Court, as it did to Judge Lawson in his January 11, 2010 order, that she contends the Defendants violated section 3729(a)(1)(A), which provides for liability as to any person who "knowingly presents, or

causes to be presented, to an officer or employee of the United States Government … a false or fraudulent claim for payment or approval," and section 3729(a)(1)(B), which provides for liability as to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government."[6]

As noted above, Judge Lawson held that Parato's Amended Complaint failed to state a claim for Medicare/Medicaid fraud, but left intact Parato's claim that the Defendants falsely certified to the government that UnaHealth was in compliance with federal regulations and that, as a result, UnaHealth improperly received Section 330 grant funds. To state a false certification claim, "it is necessary to allege not only a receipt of federal funds and a failure to comply with applicable regulations, but also that payment of the federal funds was in some way conditioned on compliance with those regulations." *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 303 (3d Cir. 2008). Although the Defendants seek to revisit issues decided by Judge Lawson, the Court sees no reason to reconsider Judge Lawson's Order. Accordingly, the Court will instead move directly to the substantive allegations of Parato's false certification claim and whether that claim can withstand summary judgment, as opposed to a motion to dismiss.

---

[6] As noted in Judge Lawson's Order, 31 U.S.C. § 3729 was amended in 2009 by the Fraud Enforcement Recovery Act of 2009 ("FERA"). Pub. L. No. 111-21, 123 Stat. 1617. The amended version of subparagraph (A) is not applicable here because it applies only to conduct on or after the date of enactment, which was May 20, 2009. Subparagraph (B) took effect as if enacted on June 7, 2008, and applies to all claims under the FCA that were pending on or after that date. For purposes of the FCA, a "claim" is defined as a "request or demand … for money or property." 31 U.S.C. § 3729(c). The revised version of section (a)(1)(B) does not apply to this case because none of the Defendants' claims (the grant requests) were pending on or after June 7, 2008. *See Hopper v. Solvay Pharmaceuticals, Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009).

As discussed above, Parato's claim is based on her contention that the Defendants certified that they would comply with certain grant requirements. Specifically, Parato contends that that in order to obtain approval as a Federally Qualified Health Center and receive or continue receiving Section 330 funding, UnaHealth falsely certified that it "[w]ill establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain" and that it "[w]ill comply with all applicable requirements of all other federal laws, executive orders, regulations and policies governing this program."  Thus, the grant applications do not contain a certification of past compliance, but rather, they exact a promise of future compliance.

The elements of Parato's claim are: (1) that the Defendants made a claim, or made a statement in order to get the Government to pay money on a claim; (2) that the claim or statement was false or fraudulent; and (3) that the Defendants knew that the claim or statement was false or fraudulent.  *See* 31 U.S.C. § 3729(a)(1)(A)-(B).  Under the FCA, a person "knowingly" submits a false claim if, with respect to information in the claim, the person: (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(A)-(B).

There can be no real debate about the first element of Parato's claim: that the Defendants made a claim or made a statement in order to get the Government to pay money on a claim.  The FCA defines a "claim" as "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor,

grantee, or other recipient if the United States provides any portion of the money or property which is requested or demanded …." 31 U.S.C. § 3729(c). The November 2003 and August 2005 grant applications, and the assurances made by UnaHealth with those applications, qualify as claims and statements in furtherance of claims under this definition—they were requests for federal grant money to be paid by the Department of Health and Human Services, an agency of the United States Government.

Elements two and three require considerably more analysis. Because the FCA does not define "false" or "fraudulent," courts have not delineated a clear standard for determining whether a claim is, in fact, false or fraudulent. "[I]n practice courts have found it impossible to give meaning to the term [falsity] without also implicating the third element, the requirement that the defendant had 'knowledge' of the alleged falsity." *U.S. ex rel. Lamers v. City of Green Bay*, 998 F.Supp. 971, 986 (E.D. Wis. 1998). Furthermore, "[t]he inseparability of the falsity element and the scienter element is consistent with the whole purpose behind the FCA, which is to combat fraud on the government, not scrutinize statements for facial inaccuracies." *Id.* In that regard, innocent mistakes or negligence are not actionable, nor are imprecise statements arising from a disputed legal question. *See Hindo v. University of Health Sciences*, 65 F.3d 608, 613 (7th Cir. 1995); *see also Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477-78 (9th Cir. 1996).

Moreover, the Eleventh Circuit has held that the FCA "does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *McNutt ex rel. U.S. v. Haleyville Medical*

*Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005) (internal quotation marks and citation omitted). At a minimum, "the FCA requires proof of an objective falsehood." *U.S. ex rel. Roby v. Boeing*, 100 F.Supp.2d 619, 625 (S.D. Ohio 2000).

Here, Parato's claim amounts to one of "promissory fraud." That is, that the Defendants' Section 330 grant applications contained false assurances that UnaHealth would comply, in the future, with all applicable regulations and requirements. The certifications or assurances ranged from broad, general assurances, e.g., that UnaHealth "will comply with all applicable requirements," to more narrowly tailored assurances, e.g., that UnaHealth "will establish safeguards to prohibit employees from using their positions for a purpose that constitutes or presents the appearance of personal or organizational conflict of interest, or personal gain."

Although courts have held that promissory fraud can give rise to an FCA claim, it is a difficult theory under which to proceed. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). "Any promise to perform is not only a prediction but a statement of existing intent, and thus capable of misrepresentation." *Lamers*, 998 F.Supp. at 987. However, for a claim of promissory fraud to be actionable, the Plaintiff must show that the "promise" was false when made. *Id.* (citing *U.S. v. Shah*, 44 F.3d 285, 290 (5th Cir. 1995)). Thus, here, Parato must come forth with sufficient evidence to show, by a preponderance of the evidence, that UnaHealth's assurances and certifications were known to be false at the time they were made. Put another way, Parato must show that, at the time UnaHealth submitted its Section 330 grant applications, UnaHealth had no intention of fulfilling the assurances or complying with applicable HHS regulations and requirements.

Simply put, Parato has failed to show that, at the time UnaHealth submitted its grant applications in November 2003 and August 2005, UnaHealth had no intention of complying with the assurances contained therein.  Whyte was not hired by UnaHealth until December 16, 2004.  Clearly, any FCA violation stemming from an alleged conflict of interest caused by Whyte's employment could not occur until the Board either hired or contemplated hiring Whyte.  Because there is no evidence that the Board discussed Whyte prior to submitting its first grant application, there can be no false certification arising from the November 2003 application.

With regard to the August 2005 application, Parato, though not expressly, essentially argues that because UnaHealth allegedly violated the conflict of interest regulations in January 2005 when Whyte oversaw the purchase of computer equipment from Companion, its August 2005 assurance that it would establish safeguards to prevent future conflicts must have been false or fraudulent.  However, as discussed above, "[i]t is not the case that any breach of contract, or violation of regulations or law … automatically gives rise to a claim under the FCA." *Hopper*, 91 F.3d at 1265.  Evidence of past regulatory noncompliance—in this case, an alleged violation of conflict of interest regulations—is not sufficient to establish knowing fraud by UnaHealth when it submitted its August 2005 application.  *See Id.* at 1267-68.  Again, that application did not certify a blemish-free past, it promised future compliance, and there is no evidence that that promise was false when made.

Accordingly, the Defendants' Motions are **granted** on Parato's false certification claim.

### C. Retaliation

Parato also alleges that her termination was an act of retaliation for protected conduct, in violation of 31 U.S.C. § 3730(h).[7]  The FCA provides "whistleblower" protection for

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others **in furtherance of an action** under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section….

31 U.S.C. § 3730(h) (emphasis added).

Parato brings her retaliation claim against all the Defendants.  However section 3730(h) makes clear that the proper defendant in a retaliation claim is the "employer."  None of the individual Defendants, in their individual capacities, "employed" Parato.  Moreover, "even in cases arising under Title VII, which explicitly defines 'employer' as including 'any agent of such a person [a person engaged in commerce and employing 15 or more persons],' … the word 'employer' does not cover a supervisor in his personal capacity."  *Yesudian ex rel. U.S. v. Howard University*, 270 F.3d 969, 972 (D.C. Cir. 2001) (citing *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).  Accordingly, UnaHealth alone is the proper Defendant to Parato's retaliation claim, and summary judgment is **granted** to all individual Defendants on Parato's § 3730(h) retaliation claim.

---

[7] Like section 3729, section 3730(h) was amended in 2009.  However, the amended version of section 3730(h) does not apply to this case because the amended version, which took effect on May 20, 2009, applies only to conduct on or after May 20, 2009.  Here, the alleged retaliatory conduct occurred in 2005.

Parato does not claim to have direct evidence that her termination was an act of retaliation for her protected activity.  Rather, like most victims of alleged job discrimination and retaliation, she relies on circumstantial evidence, and the framework for analyzing circumstantial evidence first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to make her case.  To establish a prima facie case of retaliation, a plaintiff must prove that (1) the employer is covered by the act at issue, (2) the employee engaged in protected activity, (3) the employee suffered adverse action, and (4) there is an inference of causation between the protected activity and the adverse action.  *Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307, 1317 (M.D. Ala. 1999) (citing *Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 934 (11th Cir. 1995)).[8]

A prima facie case of retaliation raises a presumption that the employer is liable to the employee, and the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nonretaliatory reason for the employment action.  *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

The burden then returns to the plaintiff to prove that the employer's reasons are pretextual.  *Id.* at 253.  The employee can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or*

---

[8] Some courts articulate a two part test, while others articulate a three part test.  *Mack v. Augusta-Richmond County, Georgia*, 365 F.Supp.2d 1362, 1378 (S.D. Ga. 2005) ("[A] plaintiff must show that (1) he engaged in protected conduct and (2) that the defendant retaliated against him because of that conduct."); *Robinson v. Jewish Center Towers, Inc.*, 993 F.Supp. 1475, 1477 (M.D. Fla. 1998) ("[T]he plaintiff must show that she engaged (1) in conduct protected under the False Claims Act; (2) defendant was aware of the plaintiff's actions; and (3) plaintiff was terminated in retaliation for her conduct."). Comparing the two and three part tests, Judge Bowen in *Mack* wrote, the "third element of knowledge on the part of the defendant is subsumed into the element of causation for a defendant cannot retaliate or discriminate against a plaintiff because of his whistleblowing activities if the defendant is unaware of such activity."  365 F.Supp.2d at 1378.  Substantively, each version of the test gets to the same place. Because the parties used the *Mann* four part test, the Court uses it here.

indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (emphasis added). If the proffered reason is one that might have motivated a reasonable employer, the employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

UnaHealth does not contest, nor could it, elements (1) and (3) of the prima facie case: UnaHealth received federal funds from HHS, thereby subjecting it to coverage under the FCA, and Parato was fired as UnaHealth CEO.

Essentially, UnaHealth raises two arguments, though it tends to lump the two together. First, UnaHealth contends that Parato, when she was voicing her complaints, never threatened to bring an FCA claim and was not acting in furtherance of an FCA action. Rather, she was merely doing what she was supposed to do as Chief Executive Officer, i.e., bring to the Board's attention what she perceived, erroneously the Defendants contend, to be irregularities, or "minor" irregularities as the Defendants would put it. Second, UnaHealth argues that Parato's allegations had no merit and thus UnaHealth did not terminate her for bringing to the attention of its Board allegations of FCA fraud, but rather it terminated Parato for raising allegations of fraud and wrongdoing that had no merit. The first argument implicates the second prong of Parato's prima facie case, i.e., whether she engaged in protected activity. The second argument does not attack Parato's prima facie case, but rather amounts to a reason UnaHealth claims it fired Parato. In other words, it is one of UnaHealth's legitimate, nonretaliatory reasons for Parato's discharge.

UnaHealth's first argument can be called the "internal reporting" or "scope of duties" argument. It goes something like this. If an employee's duties include reporting wrongdoing to her superiors, then simply reporting that wrongdoing cannot amount to protected conduct because the employee is simply doing what she was obligated to do; her conduct is not in furtherance of an FCA claim. UnaHealth, understandably, relies on *Mack v. Augusta-Richmond County, Georgia*, 365 F.Supp.2d 1362 (S.D. Ga. 2005), *aff'd* 148 Fed. Appx. 894 (11th Cir. 2005), which in turn relied on *Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307 (M.D. Ala. 1999). In *Mann*, Judge Thompson examined the protected conduct prong of the prima facie case when the employee, at the time she was raising her allegations of fraud, was not even aware that the FCA existed. Consequently, her employer argued, her conduct could not have been "in furtherance of" an action under the FCA. The employer buttressed its argument by noting that if reporting irregularities was part of the employee's regular job responsibilities, then the employer would have even less reason to believe that the employee's conduct was "in furtherance of" an FCA action. Judge Thompson rejected this narrow approach. Instead, he held that an employee engaged in protected conduct when "a factfinder could reasonably conclude that the employer could have feared that the employee was contemplating filing a qui-tam action against it or reporting the employer to the government for fraud." *Mann*, 49 F.Supp.2d at 1314. For example, if the employee "communicated to the employer that she believed that the employer had engaged in illegal or fraudulent conduct involving submission of claims for payment to the government," that can be sufficient to constitute protected conduct. *Id.*

In *Mack*, Judge Bowen followed Judge Thompson's approach in a case of a high-level employee who raised allegations of inappropriate conduct.  Judge Bowen posed this question: "Indeed, why would an employer fear that an employee reporting non-compliance,  whose job responsibilities include ensuring regulatory compliance, seeks to file a False Claims Act suit or report fraud to the government?"  365 F.Supp.2d at 1380.  Based on the facts in *Mack*, Judge Bowen found that the evidence established that the employee was simply trying to "ensure compliance" with federal regulations in accordance with his job duties.  These facts did not demonstrate a "distinct possibility"[9] of a False Claims Act claim when the employee raised his concerns.

However, the latest word on the subject comes from the Eleventh Circuit in *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300 (11th Cir. 2010), which the parties do not cite.  In *Sanchez*, Sanchez, the employee, complained internally to the owners of her company about several of the company's practices which she believed were illegal.  The defendants argued that Sanchez's conduct was comparable "to the sort of internal reporting that some [other] circuits have held falls outside the scope of § 3730(h)."  *Id.* at 1304.  However, the Eleventh Circuit noted that even those courts recognized that internal reports alerting an employer to fraudulent or illegal conduct may be sufficient to put the employer on notice of possible FCA litigation.  The Eleventh Circuit concluded: "Sanchez's allegations that she complained about the

---

[9] Very generally, an employee engages in protected activity when she raises a "distinct possibility" that an FCA claim will be asserted against the employer.  However, as noted by other courts, the "distinct possibility" label is not particularly helpful.  As Judge Thompson stated in *Mann*, in cases "where the plaintiff did not even know about the FCA and therefore did not tell her employer that she was contemplating legal action, the correct application of the 'distinct possibility' test is much more difficult, if not completely elusive."  49 F.Supp.2d at 1313.  The reasoning used in *Mann*, *Mack*, and, most recently, *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300 (11th Cir. 2010) provides much better guidance than the general "distinct possibility" test, particularly in the context of an employee whose job duties require her to report wrongdoing.

defendants' 'unlawful actions' and warned them that they were incurring significant criminal and civil liability would have been sufficient, if proven, to support a reasonable conclusion that the defendants were aware of the possibility of litigation under the False Claims Act." *Id.* Thus, the question is not simply whether Parato was "doing her job" when she raised her concerns or whether she expressly threatened FCA litigation, but whether her alarums were sufficient to support a reasonable conclusion that UnaHealth was aware of the possibility of an FCA action, either by Parato or by the government. As it turns out, Parato's allegations were very similar to Sanchez's allegations.

Shortly after beginning work as UnaHealth's CEO, Parato became aware of numerous alleged deficiencies at the center, and she immediately notified the Board of her concerns. In a memorandum to the Board dated August 25, 2005, Parato stated that Whyte's "purchase of Companion Technologies equipment … is without question a conflict of interest that is in direct violation and breach of our grant application; the continuing application report, which I understand Dr. Whyte himself prepared and attests that conflicts of interest do not exist; and the law." In the same memorandum, Parato stated that "just because something is not stipulated specifically in a statute does not make it any less illegal."

The next day, in another memorandum to the Board, Parato expressed her concerns regarding UnaHealth's alleged filing of fraudulent Medicare and Medicaid claims: "there is no other agenda the government looks toward eradicating more than claims fraud. If staff follow [Whyte's] direction and this was discovered, and it is checked relentlessly by the government, honest, hardworking people could go to jail.

Claims filing is a complicated and highly scrutinized area as it is, to compromise staff in this way is simply unacceptable."

Based on this conduct, UnaHealth could have reasonably feared that Parato would, at a minimum, report the suspected fraudulent activity to the government. She characterized several instances of UnaHealth conduct as "illegal," in violation of federal regulations, and "claims fraud," and she even raised the specter of potential criminal liability stemming from UnaHealth's actions. Moreover, she informed the Board of the seriousness with which the government investigates potential fraudulent activity by health centers. Thus, Parato's actions were sufficient to support a reasonable conclusion that UnaHealth was aware of the possibility of litigation under the FCA.

For the last element of her prima facie case, Parato must demonstrate a causal connection between her protected conduct and her termination as UnaHealth CEO. "The showing necessary to demonstrate the causal-link part of the prima-facie case is not onerous." *Mann*, 49 F.Supp.2d at 1317. The plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). "The plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff." *Id.*

Additionally, the Supreme Court requires a causal link based on mere temporal proximity to be "very close" and approvingly cited circuit decisions holding three-and four-month periods insufficient to establish a causal connection. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). The Eleventh Circuit has recognized that a seven-week temporal proximity between acts could establish a causal

connection.  *Nicholas v. Bd. of Trustees of Univ. of Ala.*, 251 Fed. Appx. 637, 644 (11th Cir. 2007).

Here, UnaHealth was undoubtedly aware of Parato's conduct, and the temporal proximity between her protected conduct and her discharge could not be closer. Between August 22, 2010 and August 26, 2010, Parato sent numerous memoranda to the Board detailing her concerns over UnaHealth's alleged regulatory noncompliance and illegal activity.  The Board, by its own admission, convened meetings on August 28, 29 and 30, 2010, to discuss Parato's allegations.  Following the meeting on August 30, Parato was informed that she had been terminated.  Based on this sequence of events, the Court is satisfied that there was, at the very least, an inference of causation between Parato's protected conduct and her termination.  Accordingly, Parato has established a prima facie case of retaliation.

Because Parato has established her prima facie case, the burden of production shifts to UnaHealth to articulate a legitimate, nonretaliatory reason for its decision to fire Parato.  UnaHealth lists numerous alleged nonretaliatory reasons in its Motion for Summary Judgment: (1) Parato was not a proper fit with UnaHealth and lacked necessary knowledge regarding Federally Qualified Health Center operations; (2) she demanded a switch to an improper accounting system from the HRSA approved accounting system in place at UnaHealth; (3) she cancelled previously scheduled television commercials; (4) she interfered with previously scheduled training sessions for employees; and (5) she never provided evidence to substantiate her claims made against fellow employees at UnaHealth.  Clearly, however, given the events of late August, the "elephant in the room" is the fact that everything happened in the context of

Parato's vigorous allegations of fraud and wrongdoing. In view of that, it is not surprising that, in its Reply Brief (Doc. 78), UnaHealth states that "[w]hen [Parato] failed to support her claims with any evidence, however, the Board decided to take action against [Parato] in consideration of the multiple other problems she had caused at UnaHealth in her brief tenure as Chief Executive Officer." In short, UnaHealth claims Parato was fired because she raised baseless allegations of fraud and wrongdoing.

In attempting to articulate a legitimate, nonretaliatory reason, it appears as though UnaHealth may have, in fact, hurt its case more than it helped it. In essence, UnaHealth argues that Parato raised concerns, albeit meritless concerns in the eyes of UnaHealth, regarding UnaHealth's noncompliance with federal regulations and laws, and because she could not substantiate her concerns in the limited time allowed her, UnaHealth fired her. Although there is evidence in the record that UnaHealth convened board meetings on August 28 and 29 to investigate and discuss Parato's allegations, the Court, as evidenced by its detailed analysis in Section B above and Judge Lawson's Order denying the Defendants' Motion to Dismiss, concludes that Parato's alleged FCA violations were not so meritless, at the time of Parato's termination, as to be capable of resolution following one or two brief meetings of the Board of Directors. UnaHealth's characterization of Parato's conduct as "crying wolf after less than two weeks on the job" drastically understates the seriousness of her allegations. If an employer could avoid FCA whistleblower liability by simply declaring that it fired an employee because her claims of fraud were baseless, the protection the FCA seeks to provide whistleblowers would be gutted. UnaHealth has not stated a legitimate, nonretaliatory reason for Parato's discharge.

In short, the Court finds that there is sufficient evidence to create a genuine issue of material fact as to whether UnaHealth was actually motivated in part by a retaliatory motive when it terminated Parato. Accordingly, UnaHealth's Motion for Summary Judgment on Parato's retaliation claim is **denied**.

### D. State Law Breach of Contract

Parato's final claim rests on theories of state law breach of contract and promissory estoppel.[10] As an initial matter, it appears that this claim is asserted *only* against UnaHealth.[11] It is UnaHealth, rather than Defendant Whyte or any other individual Defendant, that Parato contends breached the contract. For this reason, summary judgment is **granted** to Defendants Whyte, Irwin, Lemmon, Vestal, Shewman, Speight, Chaney, Ledford, Ward, Whitehead, Evans, and Gaston.

As part of its offer of employment, UnaHealth offered to reimburse Parato for the expenses associated with her relocation to the Unadilla area. According to Parato, this offer included reimbursement for all expenses associated with her travel to Unadilla for an interview, attendance at a grantee meeting, and relocation expenses. By accepting this offer, a contract was formed. Parato now alleges that UnaHealth never fully reimbursed her for the expenses she incurred, and, as a result, UnaHealth breached the contract.

UnaHealth responds that it sent Parato checks that included reimbursement for all documented moving expenses. Indeed, Parato does not deny that she received

---

[10] Federal courts have jurisdiction to hear state law claims which "derive from a common nucleus of operative fact" with a substantial federal claim. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Because Parato's state law claim arises out of the same nucleus of operative facts that gave rise to her federal claims, and because at least one federal claim remains to be tried, this Court has jurisdiction to decide the state law claim.

[11] This view is buttressed by Parato's contention in her Response to the Defendants' Motions that "UHC, [UnaHealth], is not entitled to a judgment in its favor on Count III of Plaintiff's Complaint."

check #442 from UnaHealth, which included "recruitment amounts" of $5,103.83.

However, according to Parato, this amount did not fully reimburse her for all the

expenses she alleges she incurred in relocating to Unadilla, and, consequently, she did

not cash the check out of fear that doing so would release her claims against

UnaHealth.  On September 12, 2006, UnaHealth sent Parato a letter (Doc. 75-12), in

which it notified Parato that if the check was not cashed by September 30, 2006,

UnaHealth would have the bank place a "stop payment" on it.  By voluntarily choosing

not to cash the check, UnaHealth contends, Parato waived her right to bring this breach

of contract claim.

UnaHealth is wrong.  It is well-settled in Georgia law that "[a] creditor's refusal to

accept a proper tender does not extinguish the claim."  *Kellos v. Parker-Sharpe, Inc.*,

245 Ga. 130, 133, 263 S.E.2d 138, 141 (1980) (citing *Bourquin v. Bourquin*, 120 Ga.

115, 119, 47 S.E. 639, 641 (1904)).  "The refusal of tender does not harm the tenderer.

He still has the use of the money which by his tender he admitted that he owed the

other party.  If he does not wish to use the money and wishes to avoid the payment of

interest, he can keep the tender good by holding the money ready for payment at any

time the other party wishes to accept it."  *Fitzgerald v. Vaughn*, 189 Ga. 707, 710, 7

S.E.2d 78, 81 (1940).

Moreover, Parato disputes that UnaHealth made a proper tender, and there are

questions of fact regarding what amount UnaHealth owes Parato under their agreement

for reimbursement of her "relocation expenses."  The parties dispute whether certain

expenses should be included in the total, and there is insufficient evidence in the record

to determine the proper scope of the reimbursement agreement and the final amount

due under the contract.  Therefore, UnaHealth is not entitled to summary judgment on Parato's state law breach of contract claim.

## IV.    CONCLUSION

For the foregoing reasons, the Motions for Summary Judgment are **GRANTED** on Parato's false certification FCA claim.  With regard to Parato's retaliation claim, the Motions are **GRANTED** to all individual defendants, and **DENIED** to UnaHealth.  Finally, with regard to Parato's breach of contract claim, the Motions are **GRANTED** to all individual defendants, and **DENIED** to UnaHealth.

**SO ORDERED,** this 28th day of March, 2011.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

tm